## THE INDIANA CENTRAL RAILWAY COMPANY *v.* LEAMON.

In actions before justices, any statement of facts, not having the legal requirements of a regular complaint, will be deemed a sufficient complaint, if enough be shown to bar another action for the same demand, and apprise the defendant of the nature of the demand.

If stock is killed by a railroad company, at a mere private road crossing, which was not securely fenced by the company, but which the company might legally have fenced, it will be liable under the act of *March* 1, 1853, for the value of the stock.

Where error is committed by the admission of irrelevant evidence, but the verdict is still right on the remaining evidence, this Court will not disturb the verdict.

APPEAL from the *Hancock* Circuit Court.

DAVISON, J.—*Leamon*, who was the plaintiff, sued the railway company before a justice of the peace, alleging, in his complaint, that the defendants, on the 3d of *August*, 1857, run their locomotive or cars over and killed a certain hog belonging to the plaintiff, of the value of 6 dollars. And further, that the plaintiff, on the 14th of *May*, 1858, was the owner of a certain cow worth 25 dollars, and that defendants killed said cow, by causing their locomotive or cars to run over or against her; all of which was done in *Hancock* county, *Indiana.* Wherefore the plaintiff demands judgment for 31 dollars, &c. The justice gave judgment for the plaintiff. The defendant appealed to the Circuit Court; and, in that Court, moved to dismiss the suit on the ground alone, "that the complaint failed to designate the county in which the animals were killed." This motion the Court overruled, and we think correctly. The concluding averment in the complaint, viz: "All which was done in *Hancock* county, *Indiana*," sufficiently show that the animals were killed in that county. And moreover, this suit having originated before a justice, any statement of facts, not having the legal requirements of a

---

The Indiana Central Railway Company *v.* Leamon.

---

regular complaint, will be deemed a sufficient cause of action, provided enough be shown to bar another action for the same demand, and apprise the defendant of the nature of the claim. *Melholland* v. *Pence*, 11 Ind. 203.

The issues were submitted to a jury who found for the plaintiff 29 dollars and 50 cents. And the Court, having refused a new trial, rendered judgment, &c.

The animals, described in the complaint, were, as appears by the evidence, killed while on the track of the defendant's railway, at a point where it was not fenced; but where there was a private crossing, which was used alone by the plaintiff for his own benefit, the land adjoining it on both sides being his. The use of this crossing was secured to the plaintiff by a contract in writing between him and the defendants, which was, over their objection, given in evidence to the jury. It is dated *February* the 7th, 1855, and stipulates, *inter alia*, as follows: *"Leamon* is to fence each side of the railway where the same runs through his lands, the fence to be good and sufficient, to be 160 rods on the south side of the track, and 40 rods on the north side, and to be put up and completed on or before the first of *October* next after the date of the contract. The railway company agrees to put in two cattle guards at the south-west corner of *Leamon's* land, and a road crossing so as to admit live stock, wagons, &c., passing over the railway at that place; and *Leamon* binds himself, his heirs, &c., to keep up and maintain said fences for the term of 12 years, then next ensuing; and the company agrees to pay him, when the fences are fully completed, two dollars per hundred for the rails used in building the fences. And said company is not to be liable for any stock killed on the premises after the 1st of *October*, 1855, *except they be killed on said road crossing."* The evidence further proves, that this contract was fully performed by the parties; that the railway, when the stock was killed, was securely fenced on each side of the cros-

sing, and that there were sufficient cattle guards, &c. An act approved *March* 1, 1853, contains these provisions: 1. "Whenever any animal is killed or injured by the cars or locomotives used on any railroad in this State" the owner thereof may sue before a justice of the peace. 2. "On the hearing of the cause the justice shall give judgment for the plaintiff for the value of the animal destroyed or injury inflicted, without regard to the question, whether such injury or destruction was the result of willful misconduct or negligence, or the result of inevitable accident. 3. This act shall not apply to any railroad securely fenced in, and such fence properly maintained by such company." Acts 1853, p. 113.

Under this act we have decided that, when an animal is killed or injured by a train of cars, at a point on the railroad where a public highway crosses it, the company is not liable, unless the "injury or destruction" was the result of her willful misconduct or negligence, because, at such point she is not allowed to fence the road. *Lafayette, &c., Railroad Co. v. Shriner*, 6 Ind. 141. But, in the case at bar, there was no proof of "willful misconduct or negligence." The defendants were not, therefore, liable at common law. Are they liable under the statute? The contract, given in evidence, does not vary their liability, because it stipulates, in effect, that for all the stock killed on the crossing they shall be responsible. The case stands as it would have stood had the contract been excluded. As we have seen, the animals were killed, not on a public highway, but on a mere private road crossing, a point at which the railway was not fenced; but where the defendants were clearly authorized by law to build a fence, and having failed to do so, the act of 1853, in our judgment, applies to the case made by the evidence.

The admission of the written contract is alleged to be error, sufficient to reverse the judgment. We think otherwise. It was, no doubt, irrelevant, and for that reason should

have been excluded; but, after striking it out, the verdict is still right on the remaining evidence, and will not, therefore, be disturbed. Another alleged error is that the finding of of the jury was excessive. The testimony relative to the value of the animals killed was, to some extent, conflicting, but it was for the jury to reconcile the conflict, and there was some evidence tending to prove their value as estimated by the jury.

*Per Curiam.*—The judgment is affirmed, with 5 per cent. damages and costs.

*Newcomb & Tarkington,* for the appellant.
*W. W. Wick,* for the appellee.