The Wabash Railway Company v. Williamson.

## No. 11,917.

### THE WABASH RAILWAY COMPANY v. WILLIAMSON.

RAILROAD.—*Liability to Third Persons for Stock Killed at Private Crossings.— Case Explained.*—Where, for the convenience of a farmer whose lands lie on both sides of a railroad, gates are put in the fence on each side of the track for a private crossing, he assumes the risk of all increased danger resulting therefrom, and as to him the track will be considered as having been securely fenced as the statute (section 4031, R. S. 1881) requires; but as to all other persons the railroad company is bound, at its peril, to keep the gates closed. *Grand Rapids, etc., R. R. Co.* v. *Jones,* 81 Ind. 523, explained.

SAME.—*Cattle-Pits.—Quære,* whether a railroad company can relieve itself from liability to all persons for killing stock at a strictly private crossing by putting in cattle-pits and other safeguards, either instead of or in addition to gates in its fences?

INSTRUCTIONS TO JURY.— *When Court May Direct Verdict.*—When the controlling facts in a case are admitted or not controverted, it is not error for the court to instruct the jury as to what their verdict should be.

From the Miami Circuit Court.

*C. B. Stuart* and *W. V. Stuart,* for appellant.

*A. Taylor,* for appellee.

NIBLACK, C. J.—This action was commenced before a justice of the peace of Wabash county, by Robert F. Williamson against the Wabash Railway Company, for killing two mules, upon the alleged ground that the company's line of road was not securely fenced at the point at which the mules entered upon the track. Upon an appeal to the circuit court of that county, the venue was changed to the Miami Circuit Court, where the cause was tried by a jury. After all the evidence had been heard, the court instructed the jury to return a verdict for the plaintiff, assessing his damages at $200, which was done accordingly, and, over a motion for a new trial and exceptions, judgment was rendered against the railway company for that amount of damages.

It was admitted at the trial that the railway company ran its road through the farm of John U. Pettit, in Wabash county, dividing the same into two parts, and that at the instance

and for the convenience of Pettit, gates had been erected in and as a part of the railroad fence on each side of the road, thus enabling Pettit to cross from one part to the other of his farm; that the mules were being pastured on an adjoining farm belonging to one Allen Craft, and, by reason of an insufficient fence between the farm of Craft and the farm of Pettit, they crossed over onto the latter farm, and thence, through one of the gates at Pettit's private crossing, out upon and along the railway track where they were killed by the company's locomotive and cars; that the gate through which the mules passed out onto the track was standing open at the time, and had been left open by some person unknown to either of the parties; that the mules were the property of the plaintiff and were of the aggregate value of $200, and that the plaintiff had no control of the Craft farm.

In argument much stress is laid upon the question as to whom the supposed negligence of permitting the gate to stand open for a time before the mules passed through it and were killed, ought to be imputed. As to how long the gate had so stood open, the evidence was conflicting, and it is for that reason argued that the circuit court erred in not submitting to the jury the question as to whom such supposed negligence ought to be imputed.

The real question in this case is, was the railway track securely fenced in at the point at which the mules entered upon it, within the meaning of section 4031, R. S. 1881?

As the gates were put in the fences at the instance and for the convenience of Pettit, he assumed the risk of any and all increased danger which might result to him and to his property from having gates instead of fences at the point in question. As to Pettit, therefore, the railway track must be considered as having been securely fenced at that point. As to all other persons, however, a different rule has been, and must continue to be, applied. As to all such other persons the railway company was required, at its peril, to keep the gates closed.

We have had much difficulty in giving a practicable and reasonable construction to section 4031, *supra*, in all the varying cases, requiring a construction of that section, which have reached this court, but we regard the conclusions stated as above as fairly inferable from our decided cases involving that section, taken as a whole. *Indianapolis, etc., R. W. Co.* v. *Thomas,* 84 Ind. 194; *Whitewater R. R. Co.* v. *Bridgett,* 94 Ind. 216; *Wabash, etc., R. W. Co.* v. *Tretts,* 96 Ind. 450; *Fort Wayne, etc., R. R. Co.* v. *Herbold,* 99 Ind. 91; *Bond* v. *Evansville, etc., R. R. Co.,* 100 Ind. 301; *Louisville, etc., R. W. Co.* v. *Goodbar,* 102 Ind. 596.

The facts upon which the case of *Grand Rapids, etc., R. R. Co.* v. *Jones,* 81 Ind. 523, was decided, were quite analogous to those of this case. What was said in that case, however, as to the necessity of having suitable cattle-pits at an established crossing of a railroad track, was rather of an abstract character, and had a proper reference more particularly to crossings of public highways, and to such other places on railroad tracks as are generally used as crossings, with the consent of the proper railroad companies. In that case, Jones had no connection with, or responsibility for, the gate through which his horse entered upon the railroad track, and hence, as the railroad company had permitted that gate to be standing open when the horse passed through it, the track was not securely fenced in as against Jones, and it was upon that ground that the railroad company's liability really rested in that case.

It is an open question whether a railroad company can relieve itself entirely from liability to all persons for killing stock at a strictly private crossing by putting in cattle-pits and other kindred appliances, either instead of, or in addition to, gates in its fences. By a private crossing in this connection is meant a crossing neither required nor used for any public purpose. Cattle-pits, nevertheless, constitute an element of safety at private as well as at public crossings.

It follows, therefore, that the continuous risk ordinarily

incurred by a railroad company at a merely private crossing is necessarily greater than at a public crossing, where a fence can neither be erected nor maintained. It also follows that the verdict in this case was right upon the evidence.

Some Missouri cases, cited by counsel, were decided under a statute different in some respects from our statute covering the same subject, and hence do not afford precedents which we ought to follow strictly.

When the controlling facts are admitted, as in this case, or are not controverted in any essential respect, it is not error for the court to instruct the jury as to what their verdict should be. *Carver* v. *Carver*, 97 Ind. 497.

The judgment is affirmed, with costs.

Filed Nov. 9, 1885.