PETERS, Appellant, vs. STEWART and another, Respondents.

*August 29 — September 18, 1888.*

*Railroads: Fences: "Depot grounds."*

Grounds along the main track of a railroad, on which are also a side-track, a water tank for replenishing engines, a building containing a telegraph office, ticket office, and a place for eating and sleeping, occupied by the company's station-men and agent, with a platform between such building and the track, at which trains are accustomed to stop to receive and discharge passengers and freight, are "depot grounds" within the meaning of sec. 1810, R. S., as amended by ch. 193, Laws of 1881, and hence are not required to be fenced.

APPEAL from the Circuit Court for *Ashland* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

The defendants were sued as trustees of the Wisconsin Central Railroad Company, for the value of horses killed June 15, 1883, by reason of their running into a railroad

bridge of the company, in consequence of its track not having been fenced. The material allegations of the complaint were denied. At the close of all the testimony, the court directed a verdict for the defendants, which was rendered accordingly. From the judgment entered thereon the plaintiff appeals.

For the appellant there was a brief by *Miles & Shea*, and oral argument by *J. J. Miles*. They contended, *inter alia*, that the place in question was not a depot. Rorer on Railroads, 488; *Maghee v. C. & A. R. Co.* 45 N. Y. 514, 520; *State v. N. H. & N. Co.* 41 Conn. 134. There was no highway by which the place could be reached, and the public could not resort there without being trespassers.

For the respondents there was a brief by *D. S. Wegg* and *Howard Morris*, and oral argument by *Mr. Morris*.

CASSODAY, J. The railroad crossed Silver creek upon a long iron bridge near Ashland. The plaintiff owned the lands on both sides of the right of way and railroad grounds for some distance westerly from that bridge. The plaintiff's barn stood a little north of the railroad grounds, and some 300 feet west of the iron bridge. From a point nearly opposite the barn the company had a spur or side track, 903 feet in length, running westerly to the main track. At the time in question, the plaintiff's three horses were loose, feeding near the barn, when a freight train came upon the iron bridge from the east, and the horses ran westerly upon the spur track, and from thence upon the main track, along which they continued to go until they went into the railroad bridge, some three quarters of a mile west of the iron bridge, and were killed. After crossing the iron bridge, the freight train stopped for a few minutes, and again stopped before reaching the bridge where the horses were entangled. There was no fence on either side of the railroad grounds, right of way, or track, for a distance of two

miles westerly from the iron bridge. The right to recover is predicated wholly upon such absence of any fence.

The statute requiring railroads to be fenced excepts therefrom "depot grounds." Sec. 1810, R. S., as amended by ch. 193, Laws of 1881. The only controversy here is whether the place where the horses thus got upon the track was within what are thus designated as "depot grounds." It appears, in effect, from the undisputed evidence, that at the side of the main track, and opposite the side track mentioned, there were, at the time in question, a water tank for replenishing engines, and another building within which there was a telegraph office, with telegraphic instruments, a ticket office, and a place for eating and sleeping, and which building was occupied by the company's station-men and agent, who operated the telegraph, sold tickets for the company to passengers, operated the switch and tank, and handled baggage and freight; that there was a platform between the building and the track; that trains were in the habit of stopping there and receiving and discharging passengers and freight. True, the accommodations were quite limited, but under the decisions of this court we must hold that this station building was a depot, and that the railroad grounds in connection therewith were "depot grounds," within the meaning of the statute. *Dinwoodie v. C., M. & St. P. R. Co.* 70 Wis. 163. It follows that the horses got upon the track from the depot grounds, which neither the company nor the defendants were required to fence. This being so, the injury and death of the horses were in no way attributable to the absence of any fence which the statute required the company to build. *Bremmer v. G. B., S. P. & N. R. Co.* 61 Wis. 114. These depot grounds extended about 1,500 feet westerly from the iron bridge. There was no regular highway across them, and hence the question as to the duty of constructing and maintaining cattle-guards at

such crossing, and connecting the same with such fences, under the statute cited, does not arise.

*By the Court.*— The judgment of the circuit court is affirmed.